UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BALBIR PALLIAN, JASVINDER PALLIAN,
AND KULDIP PALLIAN,

                              Plaintiffs,          Index No.: 12-CV-04639-BMC

                                                        **AMENDED**
                                                        **VERIFIED COMPLAINT**
                                                        **TO QUIET TITLE**

         -against-

METLIFE BANK, NATIONAL ASSOCIATION**;** FEDERAL
HOME LOAN MORTGAGE CORPORATION**;** MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.**;**
AND  "JOHN DOE" 1-5 and, "JANE DOE" 1-5  the last ten
names being fictitious, said parties intended being undisclosed,
unnamed and unknown investors, participants, corporate or
other entities, conduits, trustees, servicers, custodians and others,
if any, having or claiming an interest in, or lien upon the premises
described in the complaint
                                   Defendants.
_____X

Brian McCaffrey, Esq., an attorney duly admitted to practice law before the Courts of the State of New

York, hereby affirms the following under the penalty of perjury:

    I am the attorney for Plaintiffs, Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian, in the above

    entitled action. I submit this affirmation in support of the Plaintiffs' Amended Verified Complaint

    to Quiet Title. I am fully familiar with the matters set forth below based upon conversations with

    my client and my review of the file.


             **COMPLAINT TO QUIET TITLE AND FOR OTHER RELIEF**

       Plaintiffs, Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian, by and through their attorneys,

Brian McCaffrey, Attorney at Law, P.C. hereby file this Complaint to Quiet Title complaining for

declaratory judgment and judgment:  **(1)** Barring the Defendants from all claim(s) to an estate, interest,

lien or encumbrance of any sort, in the Property described herein in accordance with Real Property and Proceedings Law Article 15 or, in the alternative ordering a trial (pursuant to CPLR §2218) as to the issue of whether Defendant(s) are the actual owner of the mortgage and promissory note (which are the basis of this action herein) or in the alternative; **(2)** Granting Plaintiffs the right to rescind the transaction and remove the security instrument from the property pursuant to 12 C.F.R. PART § 226.23(a) Regulation Z; and, 15 U.S.C. § 1635(a)(f), Reg. Z §§ 226.5(b), 226.23(b) **(3)** Granting Plaintiff's request for a refund of all payments made to Defendant(s) and; **(4)** Awarding actual and statutory damages for Defendant's willful violations of the Truth in Lending Act. **(5)** Awarding  actual and statutory damages for Defendant's willful violations of the Real Estate Settlement Procedures Act **(6)** Granting an order rendering the mortgage void and directing the County Clerk to remove it of record **(7)** Awarding Plaintiff's treble damages pursuant to willful violations of New York General Business Law **(8)** Awarding Plaintiffs reasonable attorney fees, costs and disbursements for bringing this action and; **(9)** For such other and further relief as the Court deems just and proper, and allege in support thereof as follows:

## INTRODUCTION

1. Black's law dictionary defines quiet title as *"A proceeding to establish the plaintiff's title to land by bringing into court, an adverse claimant and there compelling him either to establish his claim or be forever after estopped from asserting it. "*

2. By this action to quiet title, Plaintiffs seek a declaration that they are the exclusive titleholder to their residential real property, that they acquired a fee simple absolute exclusive title to the property, and that all Mortgages and Assignments of Mortgages subsequently executed and purportedly encumbering the Plaintiff's property are voidable.  Plaintiff seeks entry of an order voiding the interest in title allegedly affected by the Mortgage and voiding the subsequent Mortgages and any Assignments of Mortgages.  Additionally, Plaintiff seeks damages for the wrongful conduct of the Defendants as set

forth below.

3. "Congress enacted TILA (Truth in Lending Act) in 1968 with the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers (See generally, 15 U.S.C. §1601[a]; <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 559 (1980).

4. Congress enacted the Real Estate Settlement Procedures Act (RESPA) because "it provided [consumers] with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." (REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974, § 6500)

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties and the subject matter.  All parties necessary to the determination of this cause have been duly joined as defendants.

6. Venue is proper pursuant to 28 U.S.C. § 1331 which states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7. The Truth in Lending Act and the Real Estate Settlement Procedures Act are federal statutes, therefore, 28 U.S.C. § 1331 grants federal courts jurisdiction over these claims.

8. This Court has jurisdiction over Plaintiff's claim that Defendant violated § 349 of New York General Business Law pursuant to 28 USC § 1367 Supplemental jurisdiction: "any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 USC § 1367 (a)

9. Defendants' violations of New York General Business Law relate to the same misreported disclosed finance charge compared to the actual finance charge that Plaintiff's TILA and RESPA

claims arise out of. They are related and form part of the same case or controversy.

10. Additionally, this Court has supplemental jurisdiction over Plaintiff's New York State Quiet Title claim as it relates to and forms part of the same case or controversy. 28 USC § 1367 (a)

11. 28 U.S.C.§ 1391(b) addresses venue, stating that venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

12. Defendant's allege that the property securing Plaintiff's mortgage is located in Queens County, New York which is located within the judicial district of the United States District Court- Eastern District of New York.


## PARTIES

13. Plaintiffs, Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian are individuals who presently reside at 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York.

14. Defendant, MetLife Home Loans, a Division of MetLife Bank, N.A. (hereinafter "MetLife") is a New Jersey headquartered National Bank. MetLife presently claims a security interest in the Plaintiffs property through a loan to the Plaintiff Balbir Pallian, that is purported to be secured by a mortgage on the property located at 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York.

15. Defendant MetLife, The Originator, allegedly wrote and funded the original loan transaction.

16. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter "MERS"), is a Delaware Corporation doing business in New York. MERS presently claims a security interest in the property 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York., through a loan to Plaintiffs that is purported to be secured by a mortgage dated March

9, 2009 on the property located at 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York

17. Defendants, Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac ") is a federally chartered corporation with its principal place of business in Maclean, VA.. Freddie Mac presently claims a security interest in the property at 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York. by way of letter from MetLife dated May 8, 2012.

18. The above-mentioned, non-individual defendants, if any, are organized and existing under the laws of the State of New York or qualified to do business in the State of New York or are corporations or partnerships doing business in the State of New York.

19. Defendants, JOHN DOE 1-10 are undisclosed, unnamed and unknown investors, participants, corporate or other entities, conduits, trustees, servicers, custodians and others in a scheme that involved the Defendants and other known and unknown parties who may have or claim an interest in the property described herein.

## PRELIMINARY STATEMENT

20. Plaintiffs bring this action pursuant to Real Property Actions and Proceeding Article 15 to quiet title and determine the parties' claims to the real property known as and located at 114-08 107th Avenue, Richmond Hill, NY 11419, Queens County, New York. Block: 09552, Lot: 0003 (the "Premises"). The subject Property is situated in the Town of Richmond Hill, in the County of Queens.

21. At all times mentioned herein, Plaintiffs, Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian, are and were residents of the State of New York, County of Queens.

22. Plaintiffs Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian acquired a fee simple absolute title to the subject property by way of a bargain and sale Deed with Covenants against Grantors acts dated May 14, 2008 and recorded in the Office of the Queens County Clerk on June 19 , 2008 in CRFN

2008000245662, wherein Balbir Singh Pallian and Javinder K. Pallian executed the deed and transferred the interest in the property to all 3 Plaintiffs.

23. Plaintiff Balbir Pallian is an individual unsophisticated in matters of real estate and mortgages.

24. Defendants are engaged in the business of originating and servicing mortgage loans and as is standard practice, should have exercised due diligence in the form of a title search and title insurance policy prior to approving a loan on the Plaintiffs property.

25. Any such title search would have highlighted to the Defendants the fact that the property was vested in 3 separate and distinct people (e.g. the Plaintiffs herein).

26. Plaintiffs have requested that title search but Defendants have refused to provide it.

27. Plaintiff Balbir Pallian attended the closing of a loan on or about March 9, 2009 without the benefit of legal counsel. Plaintiff was not provided with copies of the documents he signed and does not know what documents he signed on that date.

28. Subsequent to the March 9, 2009 closing date, in October of 2011, Plaintiff Balbir Pallian was contacted by MetLife and told by MetLife employees that they had lost his loan paperwork. MetLife sent documents to Plaintiff Balbir Pallian in October of 2011 to sign and return.

29. Plaintiff Balbir Pallian without the benefit of legal counsel signed the documents sent to him in October of 2011 and returned them to MetLife in an overnight envelope provided by MetLife.

30. Defendants have claimed that this is an exact copy of a mortgage that was signed at the March 2009 closing. Defendants claim is self serving, unsubstantiated and frankly unbelievable.

31. Defendants have provided no proof that this document was among the hundreds of documents at the original March 2009 closing.

32. Furthermore, Defendant, METLIFE HOME LOANS submitted a § 255 Mortgage Tax Exemption form including a signed Affidavit swearing that Defendant paid property mortgage tax in the amount of $8,500 on the March 9, 2009 mortgage.

33.  However, after a thorough and complete search of the public record, Plaintiff can find no proof that this tax was paid. This directly contradicts the Affidavit signed and sworn to by the Defendant.

34.  On April 13, 2012, Defendants' caused a mortgage to be recorded against the property of all three (3) of the Plaintiffs without the permission of all three (3) Plaintiffs.

35.  Defendants' mortgage bears a date on its face of March 9, 2009; this mortgage is defective in a number of way as follows: **a)** the mortgage was not executed by all three (3) property owners as required by common law; and, **b)** The document was executed on October 27, 2011 and was not notarized until November 1, 2011. Meaning, the mortgage was not signed in the presence of the notary; and, **c)** The Mortgage named MERS as the "mortgagee" for the purpose of recording—even though it never loaned any money, never had a right to receive payment of the loan, and never had a right to foreclose on the property upon a default in payment; and **d)** the Mortgage did not give MERS title to the note or mortgage, nor does the record show that the note or mortgage were ever physically delivered to MERS. **e)** Defendants claim that Freddie Mac is the owner of the loan, but there is no mention of Freddie Mac in the mortgage.

36.  Plaintiffs have searched the public record and there is no record of an assignment of the mortgage to Freddie Mac.

37.  As a result of Defendants negligence and participation in the MERS scheme, Plaintiffs are unable to determine the true owner of the mortgage and note.

38.  A search of the Official MERS website shows the Investor in this loan is Federal Home Loan Mortgage Corporation (Freddie Mac).

39.  A search of the Official Freddie Mac look-up site shows that the loan is not owned by Freddie Mac.

40. Plaintiffs Jasvinder K. Pallian (hereinafter Jasvinder Pallian), and Kuldip Pallian did not give permission to the Defendants to place a mortgage on their property and were never notified by the Defendants that this had been done.

41.  Defendants as of April 13, 2012 claim or have caused to appear in the public record claims that they may have an interest, or claim an interest, adverse to that of Plaintiffs.

42.  Defendants have caused a cloud on the title of this property which is owned by Balbir Singh Pallian (hereinafter Balbir Pallian) and Javinder Pallian and Kuldip Pallian.

43.  Defendants knew or should have known through normal due diligence that this property was owned by all three (3) Plaintiffs and should have required all three (3) owners to execute the mortgage.

44.  Defendants knowingly illegally encumbered the property of Plaintiffs without their permission.

45.  Defendants late date story about the lost loan documents in an attempt to get Plaintiff Balbir Pallian to sign a mortgage which they subsequently recorded on April 13, 2012 leaves open the very real possibility that they concocted the story of missing documents for the sole purpose of creating a security interest.

46. Plaintiffs have no knowledge of whether there may be any claims by persons that are, unknowns, infants, mentally retarded, mentally ill, or alcohol or drug abusers.

47. Plaintiffs have no knowledge of, or reason to believe, that the judgment prayed for in this action will affect any person or persons not in being, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the property involved.  Every person in being who may have been entitled to such an estate or interest if such an advent had happened immediately before the commencement of this action is named a party hereto.

48. When Defendant originated the March, 2009 mortgage, they (MetLife) participated in a variety of illegal practices giving rise to this Amended Complaint:

   (a) Defendant disclosed a finance charge (the total of all the interest the mortgagor would pay over the entire life of the loan. Loan charges include origination fees, discount points, mortgage insurance, and other applicable charges) of $478, 780.66 when in reality they charged the mortgagor a finance charge of  $481, 841.04, a difference of

$3,060.38.

**(b)** Defendant closed the loan on March 9, 2009 but Defendant funded the loan on March 12, 2009, less than three full calendar days after the closing date.

**(c)** Defendant NEVER provided Plaintiffs notice regarding their right to rescind their loan.

**(d)** Defendant received Plaintiff's application for a federally related mortgage loan on January 2, 2009 but provided Plaintiff with a Good Faith Estimate (an itemized list of fees and costs associated with the loan) on March 9, 2009, considerably more than three days after Plaintiff's application was submitted

## THE MORTGAGE IS NULL

## QUIET TITLE IS THEREFORE A REMEDY TO THAT NULLITY

### FIRST CAUSE OF ACTION:

### DEFECTIVE ACKNOWLEDGMENT

49. On or about October 27, 2011 the Defendants tricked the Plaintiff Balbir Pallian into executing a mortgage with a date of March 9, 2009 on its face. This mortgage was not notarized until November 1, 2011 and was not signed on that date in the presence of the notary. Thus the acknowledgement is defective and void as a matter of law.

> "The court again wishes to express its condemnation of the acts of notaries taking acknowledgments or affidavits without the presence of the party whose acknowledgment is taken for the affiant, and that it will treat serious professional misconduct the act of any notary thus violating his official duty." (***Matter of Napolis***, 169 App. Div. 469, 472.)

> "Upon the faith of these acknowledgments rests the title of real property, and the only security to such titles is the fidelity with which notaries and commissioners of deeds perform their duty in requiring the appearance of parties to such instruments before them and always refusing to execute a certificate unless the parties are actually known to them or the identity of the parties executing the instruments is satisfactorily proved." (***Matter of Gottheim***, 153 App. Div. 779, 782.)

**SECOND CAUSE OF ACTION:**

**VIOLATION OF THE RIGHTS OF TENANTS IN COMMON**

50.   Under New York Law, a deed to two people who are not legally married to each other creates a tenancy in common, unless a joint tenancy is expressly indicated. **EPTL§ 6-2.2(a)**

51.  Under **tenancy in common**, the co-owners own undivided interests. It is well settled that all tenants in common own equal shares and cannot encumber the property without the express written permission of each and every co-tenant.

52.  Here the Defendants duped Plaintiff Balbir Pallian into signing a mortgage illegally encumbering the interest of all of the co-tenants.

**THIRD CAUSE OF ACTION:**

**BREACH OF CONTRACT VIA SEPARATION OF THE NOTE AND MORTGAGE**

53.   This Note names METLIFE as the lender and holder.

54.  The Mortgage names MERS as the mortgagee.

55.  Thus, the Defendants have effectively separated the mortgage from the note.

56.  Plaintiff alleges that while Paragraph 20 of the mortgage does indicate the mortgage and note may be sold, Paragraph 20 specifically states that the mortgage and note would be transferred together, not separately. No assignment of subject mortgage is recorded in county records to reflect the transfer of the Mortgage Loan.  This breach of contract voids the Mortgage and Note.

57.  Plaintiff alleges Paragraph 16 of the recorded mortgage states the mortgage is governed by local laws.  Article 9 of the New York Statutes governs deeds, mortgages and assignments of mortgages in New York and § 291, says in pertinent part "A conveyance of real property, within the state….

-10-

may be recorded in the office of the clerk of the county where such real property is situated…

Every such conveyance not so recorded is void."

58.  In the instant case no assignment of the subject mortgage is recorded in the county records to reflect or memorialize any transfer of the Note.  This breach of contract voids the Mortgage and Note.

59.  There is nothing in the public record to indicate that the loan was ever assigned, transferred, sold or otherwise conveyed to Freddie Mac.

60.  There is nothing in the public record to indicate that the loan was ever assigned, transferred, sold or otherwise conveyed by Freddie Mac into a securitized pool of mortgages.

61. In the last 36 months, Carpenter v. Longan, 83 U.S. 271, at 274 has been repeatedly used as foundational precedent throughout this country, as the basis for establishing an illegal nullity in numerous courts including the Kansas Supreme Court in Landmark Nat'l Bank v. Kessler, 216 P.3d 158 (2009); and the Supreme Court of Arkansas in Mortgage Electronic Registration Systems. Inc. v. Southwest Homes of Arkansas, 2009 WL 723182 (2009), inter alia, and many others.

62. The separation of the Note from the Mortgage has rendered the security interest in the Plaintiffs property a nullity and this Court must  remove it from the title to the Plaintiffs property.


## FOURTH CAUSE OF ACTION:

## BREACH OF DUTY TO PROVIDE NOTICE AND NEGLIGENCE

63.  It is well established that before a party may be held liable for negligence it must be shown that the party owes a duty.  Palsgraf v Long Is. R. R. Co., 248 N.Y. 339, 342; *see, also,* Shearman and Redfield, *Negligence [Rev ed]*, § 4, pp 10-11. In the absence of duty, there is no breach and without a breach there is no liability. Kimbar v Estis, 1 N.Y.2d 399, 405. The question of duty is best expressed as "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser, *Torts* [4th ed], § 53, p 325.

64.  Here, Plaintiff owed a duty to Plaintiffs to comply with New York Law with respect to Plaintiffs being residents of the real property securing the mortgage held by Defendants. This duty arises from the fact that Javinder K. Pallian and Kuldip Pallian were owners of the property on the public record.

65.  Here Defendants failed to perform a title search or ignored the results of a title search which would have clearly shown that the Plaintiffs herein owned the property as tenants in common. Thus, Defendants were negligent by failing to insure clear title vested in the new mortgagor and subsequently encumbering the property without performing normal due diligence.

66.  Defendants breached this duty to provide notice by failing to inquire as to the identities of any other owners of the subject premises which they intended to encumber. As a result of the Defendants breach of that duty, notice was never given to the Plaintiffs and the Defendants negligence has caused harm to these Plaintiffs.


### FIFTH CAUSE OF ACTION:

### MERS AS A MORTGAGEE IS A NULLITY AS A MATTER OF LAW


67. The MERS system has created a cloud on titles that will have an untold impact on 400 years of recorded property rights in the United States.

68.     Defendants herein, participated in the scheme called MERS for the purpose of evading county recording fees, to avoid the need to publicly record mortgage transfers, to hide their actions from the public and facilitate the rapid sale and securitization of mortgages en masse and as such have unclean hands and should be barred from seeking equity. An action claiming foreclosure of a mortgage is one sounding in equity, _Jamaica Savings Bank v. M.S. Investing Co._, 274 N.Y. 215 (1937).

69.  Where a party acts in a manner that is offensive to good conscience and justice, he will be

completely without recourse in a court of equity, regardless of what his legal rights may be, *Eastman Kodak Co. v. Schwartz*, 133 N.Y.S.2d 908 (Sup.Ct., New York County, 1954), *York v. Searles*, 97 AD 331, 90 NYS 37 (2nd Dept.1904), aff'd 189 N.Y. 573, 82 NE 1134 (1907).

70. In this action, the original Mortgage named MERS as the "mortgagee" for the purpose of recording.

71. Here, Defendant, MERS, alleges an interest in the Plaintiffs' property in the public record by way of a mortgage which listed the "mortgagee" as MERS. (Recorded on April 13, 2012 in the office of the Queens County Clerk.

72. Defendant, MERS, alleges an interest in the Plaintiffs mortgage based on the public recording of the mortgage naming MERS, as nominee for METLIFE, where MERS was never the lawful holder or assignee of the subject note.

73. MERS official records indicate that they transferred ownership of the Plaintiffs' mortgage to Federal Home Loan Mortgage Corporation with no reference as to when or how that transfer was effectuated.

74. As such, MERS is without an interest and has no interest in the property. Thus the Mortgage which names MERS as the Mortgagee of Record is a nullity and the security interest is void.

75. Plaintiffs demand that Defendants provide evidence that MERS ever physically possessed the note and mortgage. Absent that proof, Plaintiffs respectfully assert that this Court must rule that the Defendant, MERS' interest is null and void and the Defendant MERS has no interest in the Plaintiffs property.

76. Defendants have by way of their own deceptive actions rendered their security interest fatally defective and therefore null and void.


## SIXTH CAUSE OF ACTION:
## THE OCTOBER 27, 2011 TRANSACTION HAS BEEN RESCINDED AS TO PLAINTIFFS JASVINDER AND KULDIP PALLIAN

**AND IS NOW VOID AS A MATTER OF LAW**

77. ***12 C.F.R. PART § 226.23(a) Regulation Z*** provides in pertinent part "*Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction…"

78. ***15 U.S.C. § 1635(a)(f), Reg. Z §§ 226.5(b), 226.23(b).*** provides in pertinent part "If each borrower **or person with ownership interest [emphasis added]** is not provided two adequate copies of this Notice, an ***extended three year right to rescind* [emphasis added]** is permitted under the Federal Truth in Lending Law."

79. The October 27, 2011 signing of the mortgage allegedly concluded the closing of the loan on the Plaintiffs property albeit more than 31 months later. None of the Plaintiffs were ever provided with the disclosures required; meaning the right to rescind has been extended indefinitely.

80. Plaintiffs have requested copies of all documents, notices and disclosures associated with this loan but Defendants have refused to provide all of the documentation, notices and disclosures.

81. Plaintiffs' amend their previous complaint to withdraw any reference to Plaintiff, Balbir Pallian, rescinding the October 27, 2011 signing of the mortgage transaction by sending a rescission letter to METLIFE.

82. Plaintiffs maintain that, by virtue of the fact that Plaintiffs Jasvinder K. Pallian and Kuldip Pallian were not a party to the note or the mortgage, it is implausible to think that the Defendants herein ever provided them with required disclosures and notices.

83. On May 1, 2012 Plaintiffs counsel received a telephone call from Nisa Reyes, Esq. 214-441-5351 who claimed to be legal counsel at MetLife. Ms. Reyes confirmed that she had received the rescission letter and stated she would be in contact regarding the matter within a few days. Ms. Reyes stated that she wanted to come to a resolution without litigation. Ms. Reyes has never

contacted the Plaintiffs or Plaintiffs counsel again and telephone calls to her have all gone unanswered.

84. On May 31, 2012 Plaintiffs received a letter from METLIFE stating that they had retained counsel for the purpose of initiating a foreclosure action.

85. On August 6, 2012 Plaintiffs Jasvinder K. Pallian and Kuldip Pallian each sent a separate rescission letter to METLIFE rescinding the loan as non-obligors pursuant to *15 U.S.C. § 1635(a)(f), Reg. Z §§ 226.5(b), 226.23(b).*

86. Defendants have acted in bad faith by filing a lien on property owned as tenants in common by Plaintiffs Jasvinder K. Pallian and Kuldip Pallian without ever providing them with notice that a mortgage encumbered their property or that they had the right to rescind that mortgage.

87. Jasvinder K. Pallian and Kuldip Pallian's subsequent rescission letters nullify any legal relationship between themselves and Defendants. As of August 6, 2012, Plaintiffs Jasvinder K. Pallian and Kuldip Pallian are non-obligor pursuant to *15 U.S.C. § 1635(a)(f), Reg. Z §§ 226.5(b), 226.23(b).*

<u>**SEVENTH CAUSE OF ACTION**</u>

<u>**DEFENDANTS VIOLATED THE TRUTH IN LENDING ACT**</u>

88. "Congress enacted TILA (Truth in Lending Act) in 1968 with the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers (See generally, 15 U.S.C. §1601[a]; <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 559 (1980).

89. As the public record indicates, Defendants have unlawfully clouded all three Plaintiffs' title with a mortgage that was executed in violation of three provisions contained in TILA 15 U.S.C. § 1026.

90. The following outlines Plaintiffs' claims against Defendants for violations of 15 U.S.C. § 1026.18 (d)(1):

    a. <u>Defendants violated Plaintiff Balbir Pallian. Jasvinder Pallian and Kuldip Pallians' right to receive an accurate disclosed finance charge pursuant to</u> TILA 15 U.S.C. § 1026.18 (d)(1):

> In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge: (i) Is understated by **no more than $100**;

b.   TILA 15 U.S.C. § 1026.18 (d)(1) mandates that the disclosed finance charge must not exceed the actual finance charge by more than $100.00 dollars.   The finance charge stated on the Truth In Lending Disclosure Statement (only recently provided by Defense Counsel after discovery demands by Plaintiff) is $478,780.66. The actual finance charge (as revealed by an industry standard compliance audit) is $481,841.04.   Totaling a difference of $3,060.38, which was not disclosed to Plaintiff Balbir Pallian and exceeded the $100.00 difference permissible under TILA.

c.   Plaintiffs, Jasvinder K. Pallian and Kuldip Pallian, while never being informed of the $478,780.66 (disclosed finance charge) or the actual finance charge of $481,841.04, a difference of $3,060.38, also had their property burdened by a mortgage, and subsequent lien, executed in violation of TILA 15 U.S.C. § 1026.18 (d)(1).

d.   Defendants are responsible for their TILA violations with respect to ALL Plaintiffs that they hold responsible for the mortgage in question. Therefore, all actual and statutory damages claimed by Balbir Pallian for Defendants' violations of TILA 15 U.S.C. § 1026.18 (d)(1) are multiplied by three to cover all three Plaintiffs: Balbir, Jasvinder and Kuldip Pallian.

e.   Plaintiffs were told they would pay $478,780.66 (disclosed finance charge) but he really paid the actual finance charge of $481,841.04, a difference of $3,060.38.

f.   Since the difference between the disclosed finance charge and the actual finance charge exceeds $100, Defendants have violated 15 U.S.C. § 1026.18 (d)(1) and are subject to statutory penalties contained in 15 U.S.C. §1640 (a)(2)(A):

> Any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of

this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum (1) any **actual damage** sustained by such person as a result of the failure; [and] (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, **not less than $400 or greater than $4,000**;

    g.  Plaintiffs sustained actual damages of $3,060.38 per Plaintiff, the difference between what was disclosed and what was actually charged, for a total of $9,181.14.  Additionally, Plaintiffs have a closed end credit plan and can seek statutory damages under 15 U.S.C. §1640 (a)(2)(A). Therefore, Plaintiffs request that this Court award the statutory damages of $4,000, per Plaintiff, due to the fact that Plaintiffs have a closed end credit plan, secured by real property, for a total of $12,000. Defendants, professional lenders with knowledge of the law, flagrantly violated TILA. Therefore, the Court should grant Plaintiffs the maximum statutory damages available under federal law.

91. The following outlines Plaintiffs' individualized claims against Defendants for violations of 15 U.S.C. § 1026.23 (h):

    a.  <u>Defendants violated Plaintiff Balbir Pallian, Jasvinder K. Pallian and Kuldip Pallians' right to receive an accurate foreclosure, rescission finance charge pursuant to TILA 15 U.S.C. § 1026.23 (h)</u>

    b.  TILA 15 U.S.C. § 1026.23 (h) states, in relevant part,

After the initiation of **foreclosure** on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge… shall be considered accurate for purposes of this section if the disclosed finance charge:(i)  is underestimated by **no more than $35**.

    c.  TILA 15 U.S.C. § 1026.23 (h) mandates that the disclosed finance charge must not exceed the actual finance charge by more than $35. The difference of $3,060.38, which Plaintiff

Balbir Pallian was tricked into paying, greatly exceeded the $ difference permissible under TILA. Thus this Court must issue an order rendering the mortgage un-foreclosable.

d.  Plaintiffs Jasvinder K. Pallian and Kuldip Pallian, while never being informed of the $478,780.66 (disclosed finance charge) or the actual finance charge of $481,841.04, a difference of $3,060.38, still had their property burdened by a mortgage, and subsequent lien, executed in violation of TILA 15 U.S.C. § 1026.23 (h).

e.  Defendants are responsible for their TILA violations with respect to ALL Plaintiffs that they hold responsible for the mortgage in question. Therefore, all actual and statutory damages claimed by Balbir Pallian for Defendants' violations of  TILA 15 U.S.C. § 1026.23 (h) are multiplied by three to cover all three Plaintiffs, Balbir, Jasvinder and Kuldip Pallian, individually in this action

f.  The transaction outlined on the Truth in Lending Statement shows a disclosed finance charge in the amount of $478,780.66, but the actual finance charge was $481,841.04, a difference of $3,060.38.

g.  Since the difference between the disclosed finance charge and the actual finance charge exceeds $100, Defendants have violated 15 U.S.C. § 1026.23 (h) and are subject to statutory penalties contained in 15 U.S.C. §1640 (a)(2)(A):

> Any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum (1) any **actual damage** sustained by such person as a result of the failure; [and] (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, **not less than $400 or greater than $4,000**;

h.  Plaintiffs sustained actual damages of $3,060.38 per Plaintiff, the difference between what what was disclosed and what was actually charged, for a total of $9,181.14.  Additionally,

Plaintiffs have a closed end credit plan and can seek statutory damages under 15 U.S.C.

§1640 (a)(2)(A). Therefore, Plaintiffs request that this Court award the statutory damages of

$4,000, per Plaintiff, due to the fact that Plaintiffs have a closed end credit plan, secured by

real property, for a total of $12,000. Defendants, professional lenders with knowledge of the

law, flagrantly violated TILA. Therefore, the Court should grant Plaintiffs the maximum

statutory damages available under federal law.

92. The following outlines Plaintiffs' individualized claims against Defendants for violations of 15

U.S.C. § 1026.23 (a)(3):

    a.  <u>Defendants violated Plaintiffs Balbir Pallian, Jasvinder K. Pallian and Kuldip Pallians' right</u>

        <u>to have their loan funded at least three full days following the loan's consummation</u>

        <u>pursuant to TILA 15 U.S.C. § 1026.23 (a)(3).</u>

    b.  15 U.S.C. § 1026.23 (a)(3) states, in relevant part,:

> The consumer my exercise the right to rescind until midnight of the third business
> day following consummation, delivery of the notice required by paragraph (b) of
> this section, or delivery of all material disclosures, whichever occurs last. If the
> required notice or material disclosures are not delivered, the right to rescind shall
> expire **3 years** after consummation

    c.  As shown on the HUD-1 statement, Plaintiffs' loan has a closing date of March 9, 2009 and

        a funding date of March 12, 2009- less than three full days. Under 15 U.S.C. § 1026.23

        (a)(3), Defendants should not have funded Plaintiff's loan until March 13, 2009. This

        safeguards Plaintiffs' statutory right to rescind the loan.

    d.  Defendants have violated 15 U.S.C. § 1026.23 (a)(3) and are subject to statutory penalties

        contained in 15 U.S.C. §1640 (a)(2)(A):

> Any creditor who fails to comply with any requirement imposed
> under this part, including any requirement under section 1635 of
> this title, or part D or E of this subchapter with respect to any
> person is liable to such person in an amount equal to the sum (1)
> any **actual damage** sustained by such person as a result of the

failure; [and] (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, **not less than $400 or greater than $4,000**;

e.  Plaintiff Balbir Pallian was never informed of his right to rescind. Defendants' violated his rights while reaping the benefits of securing his property with a lien.

f.  Plaintiffs Jasvinder K. Pallian and Kuldip Pallian, while never being informed of their time to rescind still had their property burdened by a mortgage, and subsequent lien, executed in violation of TILA 15 U.S.C. § 1026.23 (a)(3).

g.  Defendants are responsible for their TILA violations with respect to ALL Plaintiffs that they hold responsible for the mortgage in question. Therefore, all actual and statutory damages claimed by Balbir Pallian for Defendants' violations of TILA 15 U.S.C. § 1026.23 (a)(3) are multiplied by three to cover all three Plaintiffs, Balbir, Jasvinder and Kuldip Pallian, in this action.

h.  While not sustaining any actual damages, Defendants deprived Plaintiffs of valuable time to rescind. Plaintiffs ask this Court for the maximum statutory penalty of $4,000 per Plaintiff for a total of $12,000 due to Defendants' capacities as professional lenders and their wanton disregard of federal consumer protection law.

93. Plaintiffs therefore request this court to award Balbir Pallian $6,120.76 in actual damages and $12,000 in statutory damages; Jasvinder Pallian $6,120.76 in actual damages and $12,000 in statutory damages; and Kuldip Pallian $6,120.76 in actual damages and $12,000 in statutory damages.

## EIGHTH CAUSE OF ACTION

## DEFENDANT VIOLATED THE REAL ESTATE SETTLEMENT PROCEDURES ACT

94. Congress enacted the Real Estate Settlement Procedures Act (RESPA) because "it provided [consumers] with greater and more timely information on the nature and costs of the settlement

process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." (REAL ESTATE SETTLEMENT PROCEDURES ACT OF 1974, § 6500)

95. RESPA §1024.7 states: "3 business days after a lender receives an application, or information sufficient to complete an application, the lender must provide the applicant with a GFE. In the case of dealer loans, the lender must either provide the GFE or ensure that the dealer provides the GFE." The lender is responsible for ascertaining whether the GFE has been provided, if a mortgage broker is involved in the transaction.

96. A loan originator is deemed to have violated RESPA §1024.7 if they do not provide a GFE within three business days of receiving the borrowers loan application.

97. Defendant received Plaintiff's mortgage application on January 2, 2009. However, Defendant did not issue its GFE disclosure until March 9. 2009- sixty eight days after Defendant received Plaintiff's mortgage application.

98. This is well outside of the 3 days allowed under RESPA Section 5. Therefore, Plaintiff asks that the Court take judicial notice of yet another instance where Defendants willfully violated federal law.


### NINTH CAUSE OF ACTION

### DEFENDANT VIOLATED N.Y. GENERAL BUSINESS LAW

99. Section of 349 of the General Business Law, was enacted in 1970 as a broad consumer protection measure, and begins: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful"

100. N.Y. Gen. Bus. Law § 349(h) was added in 1980 giving private citizens a right of action for deceptive trade practices. Under 349(h) citizens can enjoin an unlawful business practice, recover actual damages (or $50, whichever is greater) and obtain attorney's fees.

101. New York General Business Law Section 349 authorizes trebling of actual damages, up to $1,000, while Section 350 permits trebling of such damages up to $10,000, for deceptive practices N.Y. Gen. Bus. Law §§ 349, 350.

102. Under N.Y. Gen. Bus. Law § 349(a), deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are declared unlawful.

103. Here the Defendant offered a disclosed finance charge of $478,780.66 but really charged $481,841.04, a difference of $3,060.38. This is clearly a "deceptive act and practice" as outlined in N.Y. Gen. Bus. Law §§ 349, 350.

104. The actual damages to Plaintiff are as follows:

   a.     In comparing the disclosed finance charge to the actual finance charge:

            i.     Disclosed Finance Charge = $478,780.66

            ii.    Actual Finance Charge = $481,841.04

            iii.   Actual Damages = Increase of $3,060.38

105. Thus, under N.Y. Gen Bus. Law 349 and 360, Plaintiff is entitled to trebling of actual damages in the amount of $3,060.38 x 3 = $9,181.14 as well as reasonable attorney's fees.

106.  Plaintiffs Jasvinder K. Pallian and Kuldip Pallian, while never being informed of the mortgage burdening their property, still had their property burdened by a mortgage, and subsequent lien, executed in violation of N.Y. Gen. Bus. Law §§ 349, 350. As a result, they are entitled to treble damages in the amount of $9,181.14 each for a total of $27,543.42 between the three Plaintiffs.


**TENTH CAUSE OF ACTION:**

**DEFENDANTS ACTIONS FALL SQUARELY WITHIN**

**THE DOCTRINE OF UNCLEAN HANDS**

107. Given the Defendants admitted involvement in the scheme called MERS which had at its heart the intent of evading county recording fees, to avoid the need to publicly record mortgage transfers, to

hide their actions from the public and facilitate the rapid sale and securitization of mortgages en masse, they should not be able to profit from their bad acts and should be compelled to remove the mortgage from the public record and be forever barred from trying to reattach it.

108. Given the Defendants voluntarily participation in a scheme whereby title to the subject property was encumbered, by way of a late date signing and recording of the mortgage naming only one of the Plaintiffs when they knew or should have known that there were three (3) owners of said property, the Defendants claims of interest should be voided and stricken from the public record so as to prevent them from profiting from their bad acts.

109. Given that Defendant MET LIFE swears, through a § 255 Tax Exempt Affidavit, that they paid the property mortgage tax of $8,500 on the March 9, 2009 mortgage, and given that, following an extensive search, there is no public record that such a tax was paid, Plaintiffs' assert that Defendant's fraudulent and misleading conduct precludes Defendants' claims of interest and therefore should be voided and stricken from the public record so as to prevent them from profiting from their bad acts.

110. Additionally, Defendants should be precluded from seeking any equitable relief as their fraudulent and deceptive practices including filing a lien against two non-mortgagors; multiple TILA violations; and their unsubstantiated claim that they paid a prior mortgage tax, remove them from the court's good graces and preclude equitable relief.

111. Therefore, Defendants claims against the property should be discharged from the public record because their ability to profit from their conduct is barred by the doctrine of unclean hands.


**DEFENDANTS HAVE OTHER REMEDIES UNDER THE LAW**

112. Defendants herein are professional banks, bankers, lenders and loan servicers who operate businesses engaged in the originating, selling, securitizing and servicing of mortgages.

113. Defendants knew or should have known of the due diligence required prior to encumbering real

property in New York.

114. Defendants knowledge of said due diligence and prudent business practices would have required a title insurance policy to protect their lien position.

115. Plaintiffs have demanded a copy of this title report but Defendants have refused to provide it.

116. Defendants have recourse against the title company that provided the title report used to provide clearance to encumber the property with the signature of only one (1) of the three (3) tenants in common who owned the property.

117. Therefore, it is incumbent upon the Defendants to release the mortgage improperly encumbering the property of the three (3) Plaintiffs herein and seek remedy through their title insurer.

118. Defendants having a remedy available to them under the law for the negligence of their title insurer and will not be damaged by a total release of the security interest now illegally encumbering the Plaintiffs property.


**WHEREFORE**, I respectfully request an Order:  **(1)** Barring the Defendants from all claim(s) to an estate, interest, lien or encumbrance of any sort, in the Property described herein in accordance with Real Property and Proceedings Law Article 15 or, in the alternative ordering a trial (pursuant to CPLR §2218) as to the issue of whether Defendant(s) are the actual owner of the mortgage and promissory note (which are the basis of this action herein) or in the alternative; **(2)**  Granting Plaintiffs, Jasvinder Pallian and Kuldip Pallian the right to rescind the transaction and remove the security instrument from the property pursuant to 12 C.F.R. PART § 226.23(a) Regulation Z; and, 15 U.S.C. § 1635(a)(f), Reg. Z §§ 226.5(b), 226.23(b) **(3)**  Granting Plaintiff's request for a refund of all payments made to Defendant(s) and; **(4)** Awarding actual and statutory damages for Defendants' willful violations of the Truth in Lending Act. **(5)** Awarding Defendant's actual damages and taking judicial notice for Defendants' violation of the Real Estate Settlement Procedures Act **(6)** Granting an order rendering the mortgage forever un-foreclosable **(7)** Awarding Plaintiff's treble damages pursuant to willful violations

of New York General Business Law **(8)** Awarding Plaintiffs reasonable attorney fees, costs and

disbursements for bringing this action and; **(9)** For such other and further relief as the Court deems just

and proper,

Affirmed: Queens, New York

        January 14, 2013

                               _  /s/ Brian McCaffrey____
                               BRIAN MCCAFFREY, ESQ.
                               88-18 Sutphin Bvld. (1st Fl.)
                               Jamaica, N.Y. 11435
                               (718) 480-8280 telephone
                               info@mynylawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BALBIR PALLIAN, JASVINDER PALLIAN,
AND KULDIP PALLIAN,

                    Plaintiffs,           Index No.: 12-CV-04639-BMC
                                                 **PLAINTIFFS' VERIFICATION**

      -against-

METLIFE BANK, NATIONAL ASSOCIATION, FEDERAL
HOME LOAN MORTGAGE CORPORATION MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
AND  "JOHN DOE" 1-5 and, "JANE DOE" 1-5  the last ten
names being fictitious, said parties intended being undisclosed,
unnamed and unknown investors, participants, corporate or
other entities, conduits, trustees, servicers, custodians and others,
if any, having or claiming an interest in, or lien upon the premises
described in the complaint
                            Defendants.
_____X

STATE OF NEW YORK )
COUNTY OF QUEENS  )  ss:

        Balbir Pallian, Jasvinder Pallian, and Kuldip Pallian, being duly sworn, each and every

one deposes and says that: I am the Defendant within action, and I have read the foregoing Answer and

know the contents thereof; that the same is true to my own knowledge, except as to the matters stated

to be alleged upon information, and as to those matters, I believe them to be true.


                                    __/s/ Balbir Pallian_____
                                    Balbir Pallian

                                    __/s/ Jasvinder Pallian_____
                                    Jasvinder Pallian

                                    __/s/ Kuldip Pallian_____
                                    Kuldip Pallian

 January 14, 2013.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

BALBIR PALLIAN, JASVINDER PALLIAN,
AND KULDIP PALLIAN

        Plaintiffs,

     -against-

METLIFE BANK, NATIONAL ASSOCIATION, FEDERAL
HOME LOAN MORTGAGE CORPORATION MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
AND  "JOHN DOE" 1-5 and, "JANE DOE" 1-5  the last ten
names being fictitious, said parties intended being undisclosed,
unnamed and unknown investors, participants, corporate or
other entities, conduits, trustees, servicers, custodians and others,
if any, having or claiming an interest in, or lien upon the premises
described in the complaint

        Defendants.

## Amended Verified Complaint

Pursuant to 22 NYCRR 130-1.1 the undersigned, an attorney duly admitted to practice in the courts of
the State of New York , certifies that, upon information and belief and reasonable inquiry the
contention(s) contained in the annexed document are not frivolous.

Dated:        Queens, New York
             January 14, 2013

                    /s/ Brian McCaffrey

                  _____
                  Brian McCaffrey, Esq., P.C.

              Brian McCaffrey, Attorney at Law, P.C.
                 88-18 Sutphin Bvld. (1st Fl.)
                    Jamaica, N.Y. 11435
                  (718) 480-8280 telephone

SERVICE OF PROCESS ADDRESSES

|  |  |
|---|---|
|  |  |
| METLIFE BANK, NATIONAL ASSOCIATION<br>501 ROUTE 22 WEST<br>BRIDGEWATER, NEW JERSEY, 08807 | FEDERAL HOME LOAN MORTGAGE CORPORATION<br>8200 JONES BRANCH DRIVE<br>MCLEAN, VA 22102-3110 |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>c/o CT Corporation System, Registered Agent<br>111 EIGHTH AVENUE<br>NEW YORK, NEW YORK, 10011 |  |
| BPS<br>Michael Boughton<br>Boughton Protective Services LLC<br>U.S. Toll Free Number: 1-800-718-7943<br>Office: 703-740-1136<br>Fax: 703-842-8348<br>**Corporate Office**<br>8201 Greensboro Dr. Suite 300<br>McLean, VA 22102 |  |
|  |  |