```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
  BALBIR PALLIAN, et al.,                                   :
                                                            :
                              Plaintiffs,                   :
                                                            :
              - against -                                   :
                                                            :
  METLIFE BANK, NATIONAL                                    :
  ASSOCIATION; et al.,                                      :
                                                            :     **FINDINGS OF FACT AND**
                              Defendants.                   :     **CONCLUSIONS OF LAW**
                                                            :
  METLIFE HOME LOANS, a division of                         :     12 Civ. 4639 (BMC)
  METLIFE BANK, N.A. and FEDERAL                            :
  HOME LOAN MORTGAGE                                        :
  CORPORATION,                                              :
                                                            :
                              Third-Party Plaintiffs,       :
                                                            :
              - against -                                   :
                                                            :
  STEWART TITLE INSURANCE                                   :
  COMPANY,                                                  :
                                                            :
                              Third-Party Defendant.        :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

The defendant mortgage lender took a mortgage from only one of the three joint owners of a piece of real property. The issue in this case is whether an equitable mortgage or other equitable relief should be imposed on the interest of the other two owners. For the reasons set forth below, the Court concludes that the lender has failed to meet its burden of showing grounds for the imposition of equitable relief.

## FINDINGS OF FACT[1]

1. Plaintiffs Balbir and Kuldip Pallian (father and son), initially purchased the subject property as tenants in common in 2002. They financed the acquisition with a mortgage loan from Washington Mutual Bank, F.A. ("WaMu") in the amount of $351,000, and the mortgage was duly recorded. On June 1, 2005, Balbir and Kuldip engaged in an internal family transfer whereby Balbir continued as owner but Jasvinder Pallian (Balbir's wife and Kuldip's mother) became substituted as co-owner for Kuldip. This transfer was also duly recorded.

2. On that same day, Balbir and Jasvinder entered into a Consolidation, Extension, and Modification Agreement ("CEMA") with HSBC Mortgage Loan Corporation (USA) whereby HSBC became the assignee of the WaMu Mortgage. The CEMA included a mortgage of the subject property from Balbir and Jasvinder to HSBC the amount of $356,000. The CEMA and the assignment of the WaMu were also duly recorded.

3. On May 14, 2008, Balbir and Jasvinder brought their son Kuldip back into the ownership chain when the first two deeded the property to all three as tenants in common. That transfer was recorded as well.

4. One year later – on March 9, 2009 – Balbir, through a mortgage broker, refinanced the property with defendant MetLife Bank, N.A.[2] in the amount of $420,000. Jasvinder and Kuldip were not grantors or otherwise mentioned in this mortgage or any of the mortgage documents, nor did they sign the mortgage or mortgage note; only Balbir signed the

---

[1] As explained in paragraph 10 infra, Defendant initially moved for summary upon a stipulated Local Rule 56.1 statement. The parties subsequently consented to trial before the Court based on those stipulated facts. These factual findings therefore are taken from the Local 56.1 statement, although a few of the findings are based on facts which the record shows are undisputed.

[2] Defendant's proper name is "MetLife Bank Home Loans, a division of MetLife Bank, N.A." Plaintiffs improperly named defendant as "MetLife Bank, National Association."

mortgage and note. The proceeds of the MetLife loan were disbursed as follows: (1) $293,150 to pay off the HSBC loan; (2) $25,000 to Balbir; (2) $25,000 to Jasvinder; (3) $25,000 to Kuldip's wife; and (4) $25,000 to Balbir and Jasvinder's other child, Guvindar. Upon receipt of the $293,150, HSBC filed a satisfaction of the CEMA.

5. An attorney, J. Sharma, conducted the closing of the MetLife mortgage. Sharma provided the original mortgage to Empire Land Services for recording. Empire, however, did not file the mortgage. It took MetLife over two years to discover that the mortgage had not been filed, and in late October, 2011, Metlife requested that Balbir re-sign the mortgage so it could be recorded, which he did. The re-signed mortgage was recorded. However, MetLife did not request that either Kuldip or Jasvinder execute the mortgage or the note.

6. Plaintiffs Balbir, Jasvinder, and Kuldip commenced this action in state court. Defendants removed it on both diversity grounds and because one of the defendants that plaintiffs had sued was the Federal Home Loan Mortgage Corporation, which gave this Court federal question jurisdiction under 12 U.S.C. § 1452(f). Plaintiff also sued Mortgage Electronic Registration Systems, Inc. ("MERS"), which is acting either as nominal holder by assignment and/or servicer of the MetLife mortgage.

7. In their state court complaint and their amended complaint here, plaintiffs sought to "quiet title" purportedly pursuant to Article 15 of the New York Real Property Actions and Proceedings Law. They asserted that the MetLife mortgage was a "nullity" or "void as a matter of law" based on ten claims for relief, alleging various technical deficiencies under the Truth in Lending Act and the Real Estate Settlement and Procedures Act, defective notarization of Balbir's signature on the mortgage, improper assignment of the mortgage to MERS, negligence, violation of Section 349 of the New York General Business Law, and "unclean hands." None of

these claims matter because on the day set by the Court for the parties to move for summary judgment, plaintiffs voluntarily dismissed their amended complaint.

8. That did not end the action, however, because defendants had counterclaimed, asserting a number of claims for affirmative relief against plaintiffs. Specifically, defendants seek to impose an equitable mortgage on the interests in the property held by Kuldip and Jasvinder, effectively bringing them within the mortgage granted to MetLife by Balbir. Alternatively, defendants seek to reinstate the HSBC CEMA and "equitably subrogate" themselves to that mortgage so they are in effect standing in the shoes that HSBC wore before the proceeds of the MetLife mortgage to Balbir satisfied the HSBC CEMA. As a further alternative, defendants seek damages in the amount of $420,000 against plaintiffs under a theory of unjust enrichment. (Defendants' remaining claims for relief need not be discussed as they have been mooted by plaintiffs' dismissal of their amended complaint.)

9. In addition, defendants have filed a third party complaint against their title insurer, Stewart Title Insurance Company, arising out of its refusal to provide coverage against plaintiffs' claims.

10. Defendants have moved for summary judgment on their counterclaims against plaintiffs. Further, the parties have stipulated that the Court may decide this case as a trial upon the stipulated facts. This seems a prudent agreement since MetLife's claims all arise in equity and would be tried to the Court on the same factual stipulations and documents that MetLife offered in support its motion for summary judgment, and issues of intent might procedurally complicate the determination of the summary judgment motion. The Court will therefore determine defendants' counterclaims on their merits without regard to the summary judgment motion.

## CONCLUSIONS OF LAW

11. In stating their initial positions, the parties appeared to occupy common ground on a fundamental point of New York law: an equitable mortgage will be imposed on property if the parties intended for there to be a legal mortgage, but the intent was not captured in the documentation that created the legal mortgage. Thus, as MetLife stated: "Under New York law, a court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property be held or transferred to secure an obligation." Similarly, plaintiffs stated the principle as follows: "New York Courts have consistently held that the basis for imposing an 'equitable mortgage' is clear evidence of the intent of all the parties to the transaction to encumber or place a lien on a specific parcel of real property." See Teichman v. Cmty. Hosp. of W. Suffolk, 87 N.Y.2d 514, 520, 640 N.Y.S.2d 472, 475 (1996).

12. The Court then alerted the parties that the availability of summary judgment might be in question if a reasonable factfinder could draw different inferences from their submissions as to the parties' intent. Upon such advice, MetLife, in its reply papers, took a slightly different position (I suspect it would characterize it as an "alternative" position). It argued "actual intent" was not essential, but that an "implied agreement" would be sufficient to impose an equitable mortgage.

13. To the extent MetLife is saying that "actual intent" is not limited to express or expressed intent, it is correct, but even an implied agreement requires a mutual intent of the parties to have imposed a legal mortgage. See Robert S. Nusinov, Inc., v. Principal Mut. Life Ins. Co., 80 F. Supp. 2d 101, 107 (W.D.N.Y. 2000) (observing that, under New York law, "[t]o prove an implied contract, plaintiffs must establish that the parties' conduct and the surrounding

5

facts and circumstances show a mutual intent to contract and a meeting of the minds."). In other words, the case law demonstrates that an equitable mortgage will be imposed based on an implied but uneffectuated agreement to impose a legal mortgage. Further, an implied agreement will be found if, upon consideration of all the all of the circumstances, the lender proves that the parties intended a legal mortgage in the form that it asserts. See Teichman, 87 N.Y.2d at 520, 640 N.Y.S.2d at 475 ("The agreement … must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or transferred as security for the obligation.") (internal quotation omitted).

14. The intent of the parties here is not unequivocal. It should first be noted that unlike the cases upon which MetLife relies, there is nothing wrong or defective about the mortgage it obtained from Balbir. This is not a case where a signature page was missing, see Allen v. Union Fed. Mortg. Corp., 204 F. Supp. 2d 543 (E.D.N.Y. 2002), or where the mortgage documents erroneously described the property so that nothing was encumbered, see Fed. Deposit Ins. Corp. v Five Star Mgt., 258 A.D.2d 15, 692 N.Y.S.2d 69 (1st Dep't 1999). These and the other cases upon which Metlife relies involved situations where the lender obtained nothing or where a scrivener's error had occurred, thwarting the parties' intent.

15. Here, instead, when it finally recorded the mortgage, MetLife obtained a perfected lien on Balbir's interest. The papers were properly drafted and executed in recordable form to achieve that. If Balbir subsequently defaulted on the mortgage, MetLife would be fully able to foreclose on the mortgage, acquire Balbir's interest, bring an action for partition as a tenant in common, and force a sale of the property to satisfy Balbir's debt. See N.Y. Real Prop. Acts. § 901(1). No information about the value of the property, e.g., an appraisal at the time of the loan, has been offered to show that MetLife could not have been made whole on its loan by

6

foreclosing on Balbir's interest. Even if a valuation did indicate some risk of inadequate equity, MetLife has not shown a reason why it was precluded from assuming that risk.

16. There are other circumstances that cast doubt upon MetLife's argument. First, it has provided no explanation of why the mortgage was drafted solely with regard to Balbir's interest. If the papers had been drafted for all three owners to sign, and only Balbir had done so, MetLife would be on firmer footing. Of course, MetLife, with the benefit of hindsight, refers to the absence of any reference to Kuldip and Jasvinder as a mistake, although it has offered no evidence to confirm this. Moreover, if it was a mistake, it is even more peculiar that two years later, when MetLife sought belatedly to record the mortgage and asked Balbir to re-execute it, MetLife did not notice the mistake at that time and at least request that the mortgage be amended to include Jasvinder and Kuldip. At the very least, the failure to do so is inconsistent with MetLife's claim as to the parties' intent; at most, it is affirmative evidence that MetLife redid correctly that which it had attempted to do but did incorrectly two years earlier, namely obtain a mortgage on Balbir's interest in the property.

17. The issue ultimately boils down to whether MetLife has proven that Jasvinder and Kuldip implicitly intended to mortgage their interests along with Balbir's, or stated in MetLife's later-offered terms, whether they were unjustly enriched by obtaining releases of the HSBC CEMA as well as cash without replacing the HSBC CEMA with the MetLife mortgage. From MetLife's perspective, the answer is straightforward – Jasvinder and Kuldip received value and did not give anything for it.

18. However, based on the record before me, the value they received is fully consistent with an agreement between Balbir and MetLife as to the distribution of the mortgage proceeds; in other words, Balbir could have kept all the proceeds or, as he did, direct distribution

7

to and pay off the debts of whomever he wished.  Indeed, it is noteworthy that like Jasvinder, Kuldip's wife received $25,000, and so did Guvinder.  Neither Kuldip's wife nor Guvinder had anything to do with the prior mortgages or the MetLife mortgage, and MetLife is not seeking to recover the distributions to them.  Those distributions thus tend to show that no inference can be clearly drawn from the mere fact that both Jasvinder and Kuldip received a benefit from the transaction, and further confirm that Balbir and MetLife agreed as to the distribution of the proceeds in the manner in which they were distributed.  It also shows that Balbir and MetLife had an intent beyond the mere replacement of the HSBC CEMA.

19. Although, peculiarly, neither party has cited them, the New York courts have recently ruled in factually similar cases that equitable liens will not be so readily imposed.  In <u>Fremont Investment & Loan v. DelSol</u>, 65 A.D.3d 1013, 885 N.Y.S.2d 505 (1st Dep't 2009), the lender advanced a purchase money mortgage loan in connection with the sale of a residence, which was encumbered by the seller's mortgage.  The lender's attorney, using the loan proceeds, paid off the seller's mortgage, filed a satisfaction, and distributed the remaining proceeds to the seller, but failed to record the lender's mortgage or the deed transferring title to the buyer, and the sale never occurred.  The seller thus found herself continuing to own the property but free of its prior mortgage, and the lender sued to impose an equitable mortgage on the property.  The Appellate Division declined to do so, holding that:

> While [a] court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation . . . it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances.  Here, although the plaintiff demonstrated, prima facie, that the appellant was unjustly enriched by the satisfaction of the mortgage and by the other disbursements she received, the plaintiff failed to meet its burden of establishing the intent necessary to impose an equitable mortgage.

<u>Id.</u> at 1014, 885 N.Y.S.2d at 506 (internal citations and quotation marks omitted).

20. Similarly, in J.P. Morgan Chase Bank, N.A. v. Cortes, 96 A.D.3d 803, 947 N.Y.S.2d 528 (2d Dep't 2012), a husband and wife owned a residence jointly, but the lender obtained a mortgage only with regard to the husband's interest. When the lender went to foreclose, it sought imposition of an equitable mortgage on the wife's interest. The Appellate Division, however, held that the mere fact of joint ownership was insufficient to constitute the clear evidence of intent needed to impose an equitable mortgage on the wife's interest.

21. The same result obtained in US Bank N. A. v. Lieberman, 98 A.D.3d 422, 950 N.Y.S.2d 127 (1st Dep't 2012), where the lender again had a mortgage only from the husband, not from the joint owner wife. The Appellate Division held:

> It is . . . presumed that a deliberately prepared and executed document manifests the true intentions of the parties such that the proponent of reformation is required to proffer evidence, which in no uncertain terms, evinces fraud or mistake and the intended agreement between the parties. . . .
>
> . . . In fact, the very evidence proffered by plaintiff militates against . . . a conclusion [in the plaintiff lender's favor], inasmuch as neither the mortgage nor the note, prepared by plaintiff's assignor, had defendant's [the wife's] name preprinted on it, as was her husband's, neither document was executed by defendant's attorney-in-fact on her behalf; he executed them solely on behalf of defendant's husband. . . .
>
> The proponent of an equitable lien on property must establish the existence of 'a clear intent between the parties that such property be held, given or transferred as security for an obligation.' . . . [B]eyond defendant's execution of other documents related to the purchase of the property, plaintiff failed to tender any evidence establishing that defendant agreed or intended to have plaintiff's assignor place a lien on the property.

Id. at 424, 950 N.Y.S.2d at 129-130 (internal citations and quotation marks omitted).

22. That is just the case here; MetLife relies exclusively on documents which contain no indication that there is anything wrong with them and accomplish exactly what they appear on their face to have sought to accomplish. That the proceeds of the MetLife mortgage were used to free Kuldip's and Jasvinder's interests from the prior mortgage while encumbering Balbir's

interest does not *ipso facto* demonstrate any inequity, certainly not inequity sufficient to support an equitable mortgage.

23. The above-cited cases are consistent with the principle of New York law that a party's "mere expectation, however sincere, is insufficient to establish an equitable lien." <u>M & B Joint Venture, Inc. v. Laurus Master Fund, Ltd.</u>, 12 N.Y.3d 798, 800, 879 N.Y.S.2d 812, 814 (2009). It is of course MetLife's burden to prove its right to such relief; as the equity courts have said, *semper necessitas probandi incumbit ei qui agit*. The standard of proof for claimants seeking this relief is "clear evidence" or, as is sometimes stated, "clear and convincing evidence." <u>See</u> <u>New York TRW Title Ins., Inc. v. Wade's Canadian Inn and Cocktail Lounge, Inc.</u>, 225 A.D.2d 863, 638 N.Y.S.2d 800 (3d Dep't 1996); 3 Pomeroy, <u>Equitable Jurisprudence and Equitable Remedies</u> §859 (Bancroft-Whitney 1905). The authorities discussed above demonstrate that under New York law, the failure of a lender to obtain a mortgage on all joint owners' interests does not by itself meet this burden, even if the non-mortgagor joint owners receive a benefit from the mortgage. MetLife has thus failed to prove its entitlement to an equitable mortgage.

24. The holding set forth above disposes of MetLife's remaining claims, as they all hinge on its now-rejected assumption that the only possible view of its loan requires encumbering the interests of all owners. Since there is no evidence that any such implied agreement was reached, MetLife is not entitled to the complicated equitable remedy of partial reinstatement of the HSBC mortgage with a contemporaneous subordination of that mortgage to that of MetLife. Nor can there be a claim for any "unjust" enrichment on the part of Kuldip and Jasvinder simply because their father and husband, respectively, directed distribution of the

proceeds of the loan to satisfy their prior mortgage encumbrances instead of keeping those proceeds himself.

25. Defendants' motion for summary judgment [27] is denied as moot. Defendants' counterclaims are dismissed.

26. The Court believes that based on the above Findings and Conclusions, the third party complaint is likely moot. The parties to the third-party action shall inform the Court of how they intend to proceed as to the third-party action within fourteen days.

**SO ORDERED.**

                                                                                        U.S.D.J.

Dated: Brooklyn, New York
        June 20, 2013